UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
YINXIAO CHEN,                                                      :
                                                                   :
                                        Petitioner,                :
                                                                   :
                -v-                                                :          25 Civ. 9670 (JPC)
                                                                   :
JUDITH ALMODOVAR, *et al.*,                                       :          OPINION AND ORDER
                                                                   :
                                        Respondents.               :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

This habeas petition presents a question of statutory interpretation of the Immigration and Nationality Act ("INA") that has divided district judges across the country: under what circumstances is an alien who has never been lawfully admitted into this country—but has been living here nonetheless—subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or alternatively entitled to a bond hearing under 8 U.S.C. § 1226(a). In October 2023, Yinxiao Chen, a Chinese national, was served with a warrant by immigration authorities in California, charged as subject to removal based on his unlawful presence in the United States, and released on his own recognizance. That changed on November 20, 2025, when Chen was detained by immigration authorities in Manhattan pursuant to Section 1225(b)(2)(A) and thus deemed ineligible for release on bond. In this action, Chen asks the Court to order his release unless he is provided a bond hearing under Section 1226(a) within seven days. When faced with materially indistinguishable facts, judges have arrived at differing results.

In the absence of precedential authority from the Supreme Court or the Second Circuit, this Opinion endeavors to take a fresh look at this question, examining the plain text of Section 1225(b)(2)(A) in context of the INA's full statutory scheme. The following analysis leads the Court

to conclude that Chen is subject to mandatory detention pending his removal pursuant to Section 1225(b)(2)(A) and thus his habeas petition must be denied.

It is not lost on the undersigned that the overwhelming majority of judges in this District and around the country to consider the issue have reached a contrary conclusion. Nor does this Court depart cavalierly from its respected colleagues. But different jurists can be faced with a difficult legal question and come out differently. That is the case here.

## I. Background

### A. Factual Background

The resolution of Chen's Petition turns on the operation of federal immigration law. The Court first explains how the relevant statutory scheme operates before summarizing the facts of Chen's case.

### 1. The Statutory Framework

The INA dictates how noncitizens[1] are detained and ultimately removed. Under the INA, detention and removal procedures depend on the type of noncitizen at issue. The statute categorizes noncitizens based on several factors, including where they encountered immigration officials, whether they have engaged in certain disfavored conduct, and whether a determination has been made as to the likelihood of their entitlement to admission.

Title 8, United States Code, Section 1225 provides that "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). The statute defines "admission" (and "admitted") as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.*

---

[1] To avoid repetition, the Court uses noncitizen and alien interchangeably. *See* 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States").

§ 1101(a)(13)(A).  And it "deem[s]" as "an applicant for admission" an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)."  *Id.* § 1225(a)(1).

Section 1225(b), titled "Inspection of applicants for admission," then divides applicants for admission into three categories, with differing detention and removal consequences attaching to each.  First is a noncitizen "who is arriving in the United States" and that "an immigration officer determines . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title," *id.* § 1225(b)(1)(A)(i), because that noncitizen has "willfully misrepresent[ed] a material fact" in "seek[ing] to procure . . . admission into the United States," *id.* § 1182(a)(6)(C)(i), or because that noncitizen does not possess a required "valid entry document" at "the time of application for admission," *id.* § 1182(a)(7)(A)(i).  Such noncitizens are subject to expedited removal proceedings "unless the alien indicates" to the inspecting immigration officer "an intention to apply for asylum under section 1158 of this title or a fear of persecution," *id.* § 1225(b)(1)(A)(i), in which case "the officer shall refer the alien for an interview by an asylum officer," *id.* § 1225(b)(1)(A)(ii).  But any noncitizen falling under Section 1225(b)(1)(A)(i) who expresses such an intent or fear "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."  *Id.* § 1225(b)(1)(B)(iii)(IV); *see also id.* § 1225(b)(1)(B)(ii) ("If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum.").  Unless and until such a final determination is made, the INA contemplates that such applicant for admission must remain detained.  In short, applicants for admission under Section 1225(b)(1)(A)(i) are subject to expedited removal proceedings and mandatory detention pending removal or final determination of their asylum application.

The second category of admission applicants covered by Section 1225(b) is an alien "who

has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(iii)(II).  Those noncitizens are treated in the same way as the noncitizens described in Section 1225(b)(1)(A)(i), namely being subject to expedited removal proceedings and mandatory detention should an immigration officer also determine that they are inadmissible for misrepresentation or insufficient documentation, *id.* § 1225(b)(1)(A)(i)—but only if the Attorney General "designate[s]" such treatment for "any or all" of that category, a designation which "may be modified at any time." *Id.* § 1225(b)(1)(A)(iii)(I).  On January 24, 2025, the then-Acting Secretary of the Department of Homeland Security ("DHS"), exercising authority delegated by the Attorney General, extended that designation "to the fullest extent authorized by statute."  Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025); *see also id.* (explaining the prior, more limited designations).  Now, expedited removal and mandatory detention "appl[y] to noncitizens encountered anywhere within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation." *Salcedo Aceros v. Kaiser*, No. 25-cv-6924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025) (emphasis omitted).

Section 1225(b)(2) contemplates the third category of admission applicants under Section 1225(b).  Titled "Inspection of other aliens," that provision specifies that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title," 8 U.S.C. § 1225(b)(2)(A) (emphasis added), which in turn refers to a full—rather than an expedited—removal proceeding, *see id.* § 1229a.  For "an alien" so described "who is arriving on land (whether or not at a designated port

of arrival) from a foreign territory contiguous to the United States," the "Attorney General may return the alien to that territory" pending a full removal proceeding. *Id.* § 1225(b)(2)(C). Excepted from Section 1225(b)(2)'s coverage are crewmen, stowaways, and "alien[s] to whom paragraph (1) [*i.e.*, Section 1225(b)(1)] applies." *Id.* § 1225(b)(2)(B). So unlike their counterparts covered by Section 1225(b)(1), noncitizens within Section 1225(b)(2)'s ambit are entitled to full removal proceedings; but as with Section 1225(b)(1), those noncitizens are subject to mandatory detention pending removal.

No matter which of the three categories covered by Section 1225(b)(1) and Section 1225(b)(2) applies, one thing is clear: mandatory detention does not entail a bond hearing. As the Supreme Court has explained, under the "clear language" of Section 1225(b), "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). For those admission applicants there is, instead, "a specific provision authorizing release from § 1225(b) detention." *Id.* at 300. That provision allows the DHS Secretary "in his discretion" to "temporarily" "parole into the United States" any "alien applying for admission to the United States" on "a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Such parole, the provision stresses, "shall not be regarded as an admission of the alien," and when the DHS Secretary determines that "the purposes of [the] parole . . . have been served[,] the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*; *see also id.* § 1101(a)(13)(B) (explaining that an alien "paroled under section 1182(d)(5) . . . shall not be considered to have been admitted"). This "express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released," including on bond. *Jennings*, 583 U.S. at 300 (emphasis omitted).

5

Section 1226(a) covers yet another category of noncitizens, who are situated differently from their counterparts under Section 1225(b) when it comes to detention and bond hearings. Under Section 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole." *Id.* Unlike Section 1225(b), then, noncitizens covered by Section 1226(a) may—but not must—be detained pending removal proceedings, and may also be released from detention on bond or conditional parole.[2]  Regulations establish the procedures for bond hearings before an immigration judge, *see* 8 C.F.R. §§ 236.1, 1003.19, 1236.1, by which a noncitizen may be released "if he can convince" the immigration judge "that he poses no flight risk and no danger to the community," *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019).  *See, e.g.*, *In re Siniauskas*, 27 I. & N. Dec. 207, 207 (BIA 2018) (explaining that a noncitizen may be released on bond if he "establish[es]" that he "does not present a danger to persons or property, is not a threat to national security, and does not pose a risk of flight").  The Government does not dispute that noncitizens subject to Section 1226(a) are entitled to request bond hearings.  *See* Dkt. 7 ("Opposition") at 2 (asserting that if this Court determines that Chen is "detained pursuant" to Section 1226(a), Chen "would then be entitled to request a bond hearing before an Immigration Judge"); *id.* at 22 & n.7 (same).

But Section 1226(a), and the framework of discretionary detention and bond hearings it establishes, "is subject to an exception that is set out in § 1226(c)." *Preap*, 586 U.S. at 398.  Under

---

[2] The conditional parole contemplated by Section 1226(a) is different from the parole contemplated by Section 1182(d)(5)(A), discussed above.  *See Cruz-Miguel v. Holder*, 650 F.3d 189, 197-200 (2d Cir. 2011).

Section 1226(c), the Attorney General "shall take into custody any alien" who is "inadmissible" or "deportable" for certain enumerated reasons.   8 U.S.C. § 1226(c)(1).   First is a noncitizen "inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title," *id.* § 1226(c)(1)(A), which in turn refers to offenses like certain crimes of moral turpitude and controlled-substances violations, *id.* § 1182(a)(2).   Second is a noncitizen "deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title," *id.* § 1226(c)(1)(B), provisions which in turn refer to offenses like aggravated felonies and certain firearms crimes, *e.g.*, *id.* § 1227(a)(2)(A)(iii), (C).   Third is a noncitizen "deportable under section 1227(a)(2)(A)(i) of this title [referring to convictions of crimes of moral turpitude committed within a certain time "after the date of admission" with a potential sentence of at least one year, *id.* § 1227(a)(2)(A)(i)] on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year."   *Id.* § 1226(c)(1)(C).   And fourth is a noncitizen "inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title," *id.* § 1226(c)(1)(D), provisions which in turn refer to terrorist activities, *id.* §§ 1182(a)(3)(B), 1227(a)(4)(B).

In 2025, Congress added to Section 1226(c) a fifth enumerated reason for mandatory detention.   Under the Laken Riley Act, the Attorney General must detain a noncitizen who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title" and

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

*Id.* § 1226(c)(1)(E); *see* Pub. L. No. 119-1, 139 Stat. 3 (2025).   The three paragraphs of Section 1182(a) now referenced in Section 1226(c)(1)(E), by way of the Laken Riley Act, bear mention.

Paragraphs (6)(C) and (7) are the same provisions cross-referenced in the first category of applicants for admission under Section 1225(b)(1)(A)(i), rendering "inadmissible" any "alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) . . . admission into the United States," 8 U.S.C. § 1182(a)(6)(C)(i), and "any immigrant" who "at the time of application for admission" does not possess a "valid entry document," *id.* § 1182(a)(7)(A)(i).  And Paragraph (6)(A) renders "inadmissible" any "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."  *Id.* § 1182(a)(6)(A)(i). Such a noncitizen, then, must be detained if he or she was arrested for, convicted of, or admitted to committing any of the crimes listed in the Laken Riley Act and is released in connection with those crimes.

As with mandatory detention under Section 1225(b), mandatory detention under Section 1226(c) does not provide for bond hearings.  *See Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024) ("[T]he government may detain noncitizens under section 1226(c) without an initial bond determination."); *accord Jennings*, 583 U.S. at 303-06.  Rather, Section 1226(c) allows for release "only" under narrow conditions: when the Attorney General decides that release "is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4).  "By expressly stating that the covered aliens may be released 'only if' certain conditions are met, the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions," including bond.  *Jennings*, 583 U.S. at 304 (internal citation omitted).

Put together, there are at least five categories of noncitizens who are treated differently pending removal proceedings.  Those covered by Section 1225(b)(1)(A)(i) are subject to expedited

removal and mandatory detention, without bond.  The same is true of those covered by Section 1225(b)(1)(A)(iii), but only when the Attorney General so designates those noncitizens. Noncitizens covered by Section 1225(b)(2)(A) are subject to full removal proceedings but mandatory detention, without bond.[3]  By contrast, noncitizens covered by Section 1226(a), without a disqualifying criminal history, are subject to full removal proceedings and discretionary detention, with eligibility for bond.  Finally, those excepted from Section 1226(a) under Section 1226(c)—including under the Laken Riley Act—remain subject to full removal proceedings but must be detained, absent a narrow need for release for witness-protection purposes.  *See generally Jennings*, 583 U.S. at 287-89.  These categories are summarized in the below table.

---

[3] As discussed, noncitizens covered by Section 1225(b) may be paroled under Section 1182(d)(5)(A).

9

| Statutory Provision | Covered Noncitizen | Removal Proceedings | Detention |
|---|---|---|---|
| 8 U.S.C. § 1225(b)(1)(A)(i) | "[A]n alien" who "is arriving in the United States" and that an immigration officer determines is inadmissible for misrepresentation or lack of documentation | Expedited | Mandatory; no bond but potential parole |
| 8 U.S.C. § 1225(b)(1)(A)(iii) | "An alien" who "has not been admitted or paroled into the United States," who has not shown continuous physical presence for two years, who has been designated by the Attorney General, and whom an immigration officer determines is inadmissible for misrepresentation or lack of documentation | Expedited | Mandatory; no bond but potential parole |
| 8 U.S.C. § 1225(b)(2)(A) | "[A]n alien"—other than crewmen, stowaways, and those covered by Section 1225(b)(1)—"who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" | Full | Mandatory; no bond but potential parole |
| 8 U.S.C. § 1226(a) | "[A]n alien" arrested "[o]n a warrant issued by the Attorney General" | Full | Discretionary, with potential bond |
| 8 U.S.C. § 1226(c) | "[A]ny alien" with a disqualifying criminal history | Full | Mandatory; no bond but potential witness-protection release |

### 2. Chen's Detention

Chen, a Chinese citizen, unlawfully entered the United States near Tecate, California, on October 24, 2023. Dkt. 1 ("Petition") ¶¶ 15, 40; Dkt. 5 ("Return"), Exh. A ("Warrant"). That same day, he was encountered by United States Customs and Border Protection ("CBP") officers, who determined that he had illegally entered the country without inspection and without the

necessary legal documents and thus arrested him pursuant to a warrant.  Dkt. 6 ("Dawson Decl.")[4]

¶¶ 4-5.  The warrant specified that Chen was "liable to being taken into custody as authorized by

section 236 of the [INA]," *i.e.*, 8 U.S.C. § 1226.  Warrant; *see, e.g.*, *Rivera Esperanza v. Francis*,

No. 25 Civ. 8727 (RA), 2025 WL 3513983, at *1 (S.D.N.Y. Dec. 8, 2025) (explaining that "INA

§ 236(a)" is "codified at 8 U.S.C. § 1226(a)").

On October 28, 2023, CBP served Chen with a Notice to Appear.  Dawson Decl. ¶ 6.  Under

the Notice to Appear, Chen was deemed "an alien present in the United States who has not been

admitted or paroled"—rather than "an arriving alien" or one who had "been admitted to the United

States, but [is] removable"—and was charged as subject to removal under Section 212(a)(6)(A)(i)

of the INA, because he was "present in the United States without being admitted or paroled, or

[he] arrived in the United States at any time or place other than as designated by the Attorney

General."  Return, Ex. B ("Notice to Appear") (quoting 8 U.S.C. § 1182(a)(6)(A)(i)).[5]  Also on

October 28, Chen was "released on [his] own recognizance" in "accordance with section 236 of

the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations."  Return,

Ex. D ("Order of Release").

The Notice to Appear was served on an immigration court in San Antonio, Texas on

November 16, 2023, thus beginning removal proceedings against Chen.  Dawson Decl. ¶ 7.  Chen

later moved to change venue to the immigration court in New York City; that motion was granted.

*Id.* ¶ 8.  On January 11, 2024, his case was assigned to the New York Immigration Court at 26

---

[4] Docket Number 6 is a declaration from Khristopher Dawson, a Supervisory Detention and Deportation Officer with DHS's Immigration and Customs Enforcement ("ICE").

[5] According to the Government, the Notice to Appear, along with an I-213 Form explaining that a Border Patrol Agent "determined [Chen] had unlawfully entered the United States from Mexico, at a time and place other than as designated by the [DHS] Secretary," show "that an immigration officer had determined that" Chen "is not clearly and beyond a doubt entitled to be admitted" under Section 1225(b)(2)(A).  Dkt. 12 ("Gov Suppl. Ltr.") at 1 (citing Return, Ex. C ("I-213 Form") at 3).

Federal Plaza in Manhattan, and a master-calendar hearing was set for January 15, 2025.  *Id.* ¶ 9.

On August 19, 2024, Chen applied to the New York Immigration Court for asylum and withholding of removal.  *Id.* ¶ 10; Petition ¶ 46.  As part of that application, Chen admitted the allegations in the Notice to Appear and conceded removability.  Dawson Decl. ¶ 11.  An individual merits hearing on the application was scheduled for January 24, 2028.  *Id.* ¶ 12; Petition ¶ 46; Petition, Exh. C.  The master-calendar hearing scheduled for January 15, 2025, meanwhile, was cancelled.  Dawson Decl. ¶ 13.

Consistent with the conditions of his release on his own recognizance, Chen reported to ICE at 26 Federal Plaza on November 20, 2025.  *Id.* ¶ 14.  At that routine check-in, ICE canceled Chen's release and detained him, purportedly under Section 1225(b)(2)(A).  *Id.* ¶¶ 14, 17; Return, Exh. E ("EARM") at 2.  According to Chen, this detention arose from a policy issued by DHS on July 8, 2025, directing ICE employees "to consider anyone inadmissible under § 1182(a)(6)(A)(i)—*i.e.*, those who entered the United States without admission or inspection— to be subject to detention under [Section 1225(b)(2)(A)] and therefore ineligible to be released on bond."  Petition ¶ 3.  The Board of Immigration Appeals ("BIA") has since adopted a similar reading of the INA in a precedential decision binding on ICE and all immigration judges.  *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025); *accord* Opposition at 11 & n.3 (explaining that *Yajure Hurtado* is "binding on ICE" (citing 8 C.F.R. § 1003.1(g)(1)).

Later on November 20, 2025, Chen was transferred to the Delaney Hall Detention Facility in Newark, New Jersey.  Dawson Decl. ¶ 15.  On November 28, 2025, Chen was transferred to the El Paso Camp East Montana facility in El Paso, Texas, where he remains pending removal proceedings there.  *Id.* ¶¶ 16-18.

## B.    Procedural Background

On November 20, 2025, the same day he was detained at 26 Federal Plaza, Chen filed his

petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Petition ¶¶ 8-10.  Chen's Petition

names as Respondents Judith Almodovar, ICE Acting Field Office Director for the New York City

area; Kristi Noem, the DHS Secretary; Pamela Bondi, the Attorney General; and the Executive

Office for Immigration Review (collectively, the "Government").  *Id.* ¶¶ 16-19.  According to

Chen, his detention violates the INA and the applicable bond regulations under that statute because

he should have been detained, if at all, under Section 1226(a) rather than Section 1225(b)(2)(A).

*Id.* ¶¶ 49-55.  Chen further asserts that his detention "without a bond redetermination hearing to

determine whether he is a flight risk or danger to others violates his right to due process."  *Id.*

¶¶ 56-59.  Chen thus asks this Court to order the Government to release him unless he is provided

"a bond hearing under § 1226(a) within seven days."  *Id.* ¶ 7; *see also id.* at 12 (prayer for relief

asking the Court to "[i]ssue a Writ of Habeas Corpus requiring that Respondents release Petitioner

or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within

seven days").

On November 24, 2025, the Court ordered the Government to file a response by December

5, 2025, and for Chen to file a reply by December 12, 2025.  Dkt. 4.  The Government filed its

opposing papers on December 5, 2025.  Return; Dawson Decl.; Opposition.  Chen replied on

December 12, 2025.  Dkt. 9 ("Reply").

On January 2, 2026, this Court ordered the Government to "clarify" in the record where "it

is established that an 'examining immigration officer determined that' Chen 'is not clearly and

beyond a doubt entitled to be admitted.'"  Dkt. 10 (citation modified) (quoting 8 U.S.C.

§ 1225(b)(2)(A)).  "If such a determination was made but is not reflected in the current record,"

the Government was ordered to "supplement the record" with that determination.  *Id.*  The parties

were further ordered to file simultaneous letter briefs "on whether [Section 1225(b)(2)(A)] applies

if no examining offer has made a determination that the alien seeking admission is not clearly and

beyond a doubt entitled to be admitted." *Id.* (internal quotation marks omitted). "In answering that question," the Court ordered the parties to "discuss the impact, if any, of the warrant requirement in [Section 1226(a)], and whether an applicant for admission would be subject to Section 1226(a) if no such determination [under Section 1225(b)(2)(A)] is made." *Id.* On January 9, 2026, the parties filed their respective supplemental submissions. Dkt. 11 ("Chen Suppl. Ltr."); Gov. Suppl. Ltr.

## II. Legal Standard

The writ of habeas corpus extends to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts may grant such a writ "within their respective jurisdictions." *Id.* § 2241(a). The court must "dispose of the matter as law and justice require." *Id.* § 2243. Where, as here, a petition "present[s] only issues of law," the court may adjudicate it "without a hearing." *Tumba v. Francis*, No. 25 Civ. 8110 (LJL), 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025) (quoting 28 U.S.C. § 2243).

## III. Discussion[6]

Chen's Petition poses a question that can be easily stated: has he been detained under

---

[6] As an initial matter, this Court has jurisdiction over Chen's habeas petition. "Generally, '[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States,' he must file the petition in the district of confinement and name his immediate custodian as the respondent." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004)). According to ICE's records, Chen was detained at 26 Federal Plaza in this District on November 20, 2025, at 10:35 a.m. EARM at 1. He filed his Petition that day at 2:05 p.m., Dkt. 1, and represents that at the time of filing he was "currently" detained at 26 Federal Plaza, Petition ¶¶ 8, 11. While Chen was transferred to Newark, New Jersey that same day, Dawson Decl. ¶ 15, there is no indication in the record that the transfer happened before 2:05 that afternoon, nor does the Government assert that jurisdiction lies in the District of New Jersey. "[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld*, 542 U.S. at 441. Just so here. And for the same reason, Chen's further transfer to Texas, *see* Dawson Decl. ¶¶ 16-17, lacks relevance to this Court's continued jurisdiction. *See Ozturk*, 136 F.4th at 390-92.

Section 1225(b)(2)(A), which does not afford him any chance of a bond hearing pending his full removal proceeding, or Section 1226(a), which does. But reaching the answer to that question—which has yet to be definitively resolved by any circuit court,[7] let alone the Second Circuit or the Supreme Court—is not so easy. Both Chen, backed by many district judges, and the Government, backed by a smaller contingent of district judges and the BIA, offer competing interpretations of those statutory provisions. *See Barco Mercado v. Francis*, --- F. Supp. 3d ----, No. 25 Civ. 6582 (LAK), 2025 WL 3295903, at \*13-14 (S.D.N.Y. Nov. 26, 2025) (compiling a massive collection of cases on both sides of the issue (an extremely impressive undertaking), with the overwhelming majority supporting Chen's position). After applying a textual analysis with fresh eyes, this Court concludes that the Government has the better reading of the INA. Because Chen is detained under Section 1225(b)(2)(A), he is not entitled to a bond hearing. Nor does his detention without bond violate due process.

**A.      Chen Is Detained Under Section 1225(b)(2)(A), Not Section 1226(a).**

The Court first determines the meaning of Section 1225(b)(2)(A) and then applies that meaning to Chen.

**1.      Section 1225(b)(2)(A)'s Text, Structure, and Context Reveal that it Covers Applicants for Admission Who an Immigration Officer Determines Are Not Clearly Entitled to be Admitted.**

To determine a statute's meaning, the Court begins with its text, "read coherently and in context." *Yupangui-Yunga v. Bondi*, 157 F.4th 512, 519 (2d Cir. 2025). The Court thus starts with the statutory language of Section 1225(b)(2)(A), before turning to the provision's broader statutory context within the INA.

---

[7] Recently, the Seventh Circuit tentatively held, in the stay-pending-appeal posture, that the plaintiffs had "the better argument" that those noncitizens who are "already in the United States" unlawfully are detained under Section 1226(a), not Section 1225(b)(2). *Castañon-Nava v. DHS*, 161 F.4th 1048, 1060-63 (7th Cir. 2025).

**Text.**  As Section 1225(b)(2)(A) reads, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a" full removal proceeding.  8 U.S.C. § 1225(b)(2)(A); *see id.* § 1225(b)(2)(B) (excluding any alien who is a crewman, subject to Section 1225(b)(1), or a stowaway).  The provision's language thus covers situations concerning "an applicant for admission," which Section 1225(a)(1) "deem[s]" as "[a]n alien *present in the United States who has not been admitted* or who arrives in the United States (whether or not at a designated port of arrival . . . )." *Id.* § 1225(a)(1) (emphasis added).  The INA further defines "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  *Id.* § 1101(13)(A).  Put together, Section 1225(b)(2)(A) initially reaches situations concerning noncitizens—other than those expressly excepted under Section 1225(b)(2)(B)—present in the United States who have not gained lawful entry into the country after inspection and authorization by an immigration officer.

The question, then, is whether the rest of Section 1225(b)(2)(A) limits the scope of that initial coverage, which is primarily where courts have diverged.  After specifying that it covers applicants for admission—*i.e.*, those present in the United States who have not gained lawful entry—Section 1225(b)(2)(A) proceeds to mandate detention when "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  *Id.* § 1225(b)(2)(A).  In other words, for aliens who do not fall under Section 1225(b)(1) and are neither crewmen nor stowaways, Section 1225(b)(2)'s plain language imposes two requirements: (1) the noncitizen must be "an applicant for admission" and (2) "the examining immigration officer" must determine that the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

Many of this Court's peers have read this second portion of Section 1225(b)(2)(A) as

applying to a subset of applicants for admission—specifically, those noncitizens "seeking admission"—rather than to all applicants for admission. *E.g.*, *Tumba*, 2025 WL 3079014, at *3-4; *J.G.O. v. Francis*, No. 25 Civ. 7233 (AS), 2025 WL 3040142, at *2-4 (S.D.N.Y. Oct. 28, 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487-89 (S.D.N.Y. 2025); *see also Castañon-Nava*, 161 F.4th at 1060-63 (tentatively agreeing with this approach in the stay-pending-appeal posture). On this reading of Section 1225(b)(2)(A), applicants for admission are different from noncitizens seeking admission, so the phrase "seeking admission" must be given independent meaning to avoid the canon against superfluous language. *See, e.g.*, *J.G.O.*, 2025 WL 3040142, at *2-4. Such a reading, while admittedly "puzzling," *id.* at *3, and "counterintuitive," *Tumba*, 2025 WL 3079014, at *3, is purportedly compelled by the text of the statute.

This Court disagrees. Section 1225 itself expressly treats applicants for admission as among those seeking admission—indeed, it does so twice. First, Section 1225(a)(5) provides that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions *of the applicant in seeking admission* to the United States." 8 U.S.C. § 1225(a)(5) (emphasis added). This provision contemplates that an applicant for admission is one who, by default, is seeking admission.

Second, and similarly, Section 1225(a)(3) specifies that "[a]ll aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* § 1225(a)(3) (emphasis added). That provision "reinforces the reading that all 'applicants for admission' are 'seeking admission' because it recognizes that there are 'other[]' ways to seek admission besides being an 'applicant[] for admission.'" *Mejia Olalde v. Noem*, No. 1:25-cv-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025); *accord Altamirano Ramos v. Lyons*, --- F. Supp. 3d ---- , No. 2:25-cv-9785-SVW-AJR, 2025 WL 3199872, at *5 (C.D. Cal. Nov. 12, 2025). The word

"otherwise," after all, means to do something "[i]n a different way" or "in another manner," *Otherwise*, Black's Law Dictionary (12th ed. 2024), so Section 1225(a)(3) recognizes that one way to seek admission is to be an applicant for admission, even if there are other ways to do so. *Accord Otherwise*, Merriam-Webster, https://www.merriam-webster.com/dictionary/otherwise (last visited Jan. 14, 2026) (defining "otherwise" as (1) "in a different way or manner," (2) "in different circumstances," and (3) "in other respects"). Put differently, noncitizens seeking admission may be a broader category than applicants for admission, but not a narrower one, as that category already includes applicants for admission under the statute. For instance, a noncitizen may be seeking admission to the United States while at a location abroad—and thus would not fall under the scope of "applicant for admission" under Section 1225(a)(1). *See* 8 U.S.C. § 1225(a)(1) (deeming as an "applicant for admission" "[a]n alien present in the United States who has not been admitted or who arrives in the United States"). But an applicant for admission is someone who, under the statute, is necessarily seeking admission. *See In re Lemus Losa*, 25 I. & N. Dec. 734, 741-44 (BIA 2012).

In taking a contrary view of the phrase "seeking admission," courts have introduced more questions to the statute than answers. *See Rock Drilling Loc. Union No. 17 v. Mason & Hanger Co.*, 217 F.2d 687, 692-93 (2d Cir. 1954) (declining to adopt an interpretation of a federal statute which "would raise a multiplicity of other questions, the answers to which are not to be found either in the crucial sentence relied on or anywhere else in the statute"). These courts read "seeking admission" as requiring "some active desire or process toward admission," meaning that someone who is "already here . . . cannot 'seek admission.'" *J.G.O.*, 2025 WL 3040142, at *3. But at what point does an alien who enters unlawfully no longer actively desire admission? Indeed, when is someone already here? The courts taking this position decline to say. *See Lopez Benitez*, 795 F. Supp. 3d at 485 ("To be sure, the line between when a person is 'seeking admission' as opposed

to being 'already in the country' is not necessarily obvious."). The answer to these messy questions, then, is the one that Congress has already provided throughout Section 1225: an applicant for admission is "seeking admission," even when that noncitizen is "present in the United States" without having "been admitted." 8 U.S.C. § 1225(a)(1), (a)(3), (a)(5), (b)(2)(A); *see Altamirano Ramos*, 2025 WL 3199872, at *7-8 (explaining that "[a] contrary rule creates difficult and improper line drawing exercises for courts" and "those questions are not only difficult; they are also not for the courts to answer").

To be sure, Congress could have "included noncitizens who are 'seeking admission' within the definition" of applicants for admission in Section 1225(a)(1), *Castañon-Nava*, 161 F.4th at 1061, or refrained from "includ[ing] the phrase 'seeking admission'" in Section 1225(b)(2)(A), *Lopez Benitez*, 795 F. Supp. 3d at 488. But it is not this Court's place to grade Congress's drafting where it has already made itself sufficiently clear. After all, "[r]ather than expecting (let alone demanding) perfection in drafting," courts "routinely construe[] statutes to have a particular meaning even as [they] acknowledge[] that Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). Because the INA evidently treats applicants for admission among those seeking admission, Section 1225(b)(2)(A) covers all noncitizens present in the United States who have not been admitted (and are not crewmen, stowaways, or subject to Section 1225(b)(1)) no matter how long they have been present or whether they are taking any particular steps to secure lawful status.

**Structure and Context.** This conclusion is bolstered by Section 1225(b)(2)(A)'s "context in the broader statutory scheme." *United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016).

To start, "the rest of § 1225 establishes that Congress knows how to limit the scope of the text geographically and temporally when it wants to." *Mejia Olalde*, 2025 WL 3131942, at *4. Section 1225(b)(1)(A)(i), for instance, applies to a noncitizen found to be inadmissible for

19

misrepresentation or insufficient documentation "*who is arriving in the United States*."  8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added).  While some courts have asserted that "[e]very part of § 1225 suggests that it applies to aliens who are arriving in the country," *J.G.O.*, 2025 WL 3040142, at *4, Section 1225(b)(2)(A)—unlike Section 1225(b)(1)(A)(i)—"has no similar language limiting applicability only to aliens who are in the process of 'arriving,'" *Mejia Olalde*, 2025 WL 3131942, at *4.  To the contrary, Section 1225(b)(2)(A) applies broadly to applicants for admission, which the INA treats as a category more expansive than arriving noncitizens.  *See* 8 U.S.C. § 1225(a)(1) (treating as an applicant for admission an "alien present in the United States who has not been admitted or who arrives in the United States"); *see also Cruz-Miguel*, 650 F.3d at 197 & n.14 (distinguishing between "aliens arriving at the border and aliens already present in the United States without inspection" and explaining that both "are deemed 'applicants for admission'").

That Section 1225(b)(2)(C) references the treatment of a noncitizen "who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States," 8 U.S.C. § 1225(b)(2)(C), merely reflects that applicants for admission include both those who are arriving and those who are already here, *see id.* § 1225(a)(1).  *But see J.G.O.*, 2025 WL 3040142, at *4 (reading Section 1225(b)(2)(C) to "repeat[]" the "theme" that "*arriving* people" constitute "the group covered by § 1225(b)(2) more generally").  Congress could have chosen to use "arriving alien" or "an alien who is arriving" rather than "applicant for admission" in Section 1225(b)(2)(A), too, but it did not.  *Cf.* 8 U.S.C. § 1225(a)(2), (b)(1)(A)(i), (b)(1)(A)(ii), (b)(2)(C), (c)(1) (each provision referring to an "arriving alien" or "an alien who is arriving"); *see Cabanas v. Bondi*, No. 4:25-cv-4830, 2025 WL 3171331, at *5 (S.D. Tex. Nov. 13, 2025) (making this point).  That choice is entitled to "meaningful" weight.  *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457-58 (2022) (discussing the "meaningful-variation canon," which applies a "presumption" that where a statute "has used one term in one place, and a materially different term

in another," the "different term denotes a different idea" (internal quotation marks omitted)).

Similarly, this Court is unpersuaded by the part of Section 1225's general title that refers to the "expedited removal of inadmissible arriving aliens." *But see Barco Mercado*, 2025 WL 3295903, at *6. For one, a different part of Section 1225's title refers to "Inspection by immigration officers," without limitation to arriving noncitizens; this aspect of the general title also mirrors the specific title of Section 1225(b)(2), which refers to "Inspection of other aliens"— and both stand in contrast to the title of Section 1225(b)(1), which refers to "Inspection of aliens arriving in the United States." And the subsequent text of Section 1225(b)(1) *does* apply expressly to arriving aliens. 8 U.S.C. § 1225(b)(1)(A)(i) (applying to an alien "who is arriving in the United States"). For another, and more fundamentally, a "title does not supplant the actual text of the provision," especially where the provision's language does not "point[] in the same direction as its title." *Cf. Dubin v. United States*, 599 U.S. 110, 124 (2023).

Also consider Section 1225(b)(1)(A)(iii), which applies to an alien who has not affirmatively shown his physical presence in the United States "continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). The text of Section 1225(b)(2)(A), by contrast, lacks any temporal limitation at all. "If Congress meant to say that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so." *Mejia Olalde*, 2025 WL 3131942, at *4. Instead, Congress chose to have Section 1225(b)(2)(A) "serve[] as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" or otherwise excepted under Section 1225(b)(2)(B). *Jennings*, 583 U.S. at 287. Congress's choice not to include a similar limit in Section 1225(b)(2)(A) is, again, entitled to meaningful weight: This Court may not read in a "time limit" (especially one that is concededly difficult to define) where none exists in the text of Section 1225(b)(2)(A). *Id.* at 304.

21

Nor does reading Section 1225(b)(2)(A) to reach noncitizens who are present in the United States without having been admitted, no matter how long their presence, "all but read Section 1226 off the books," *Tumba*, 2025 WL 3079014, at *4. That is for a few reasons. First, to trigger mandatory detention under Section 1225(b)(2)(A), "the examining immigration officer [must] determine[] that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A); if that determination is not made, then Section 1225(b)(2)(A)—along with its mandatory detention—does not apply. Further, "there are many other categories of aliens to whom § 1226(a) is applicable, but not § 1225(b)(2)." *Sandoval v. Acuna*, No. 6:25-cv-1467, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025). As mentioned above, Section 1225 treats an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Section 1226(a), however, simply applies (upon "a warrant issued by the Attorney General") to "an alien." 8 U.S.C. § 1226(a). That capacious term, "alien," even under "any reading" of Section 1225(b)(2)(A), would still apply to "noncitizens who are lawfully admitted . . . and who then remain present unlawfully." *Chen v. Almodovar*, No. 25 Civ. 8350 (MKV), 2025 WL 3484855, at *7 (S.D.N.Y. Dec. 4. 2025) (quoting *Lopez Benitez*, 795 F. Supp. 3d at 490); *see also* 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States"). It would also apply to noncitizens who are lawfully admitted and later become inadmissible or deportable for having committed offenses *other* than those specified in Section 1226(c). *See Preap*, 586 U.S. at 398, 409 (explaining that Section 1226(a) "is subject to an exception that is set out in § 1226(c)" and that "subsection (c) is simply a limit on the authority conferred by subsection (a)"); *see also* 8 U.S.C. §§ 1182(a)(1)-(10) (listing grounds for inadmissibility), 1227(a)(1)-(6) (listing grounds for deportability). So Section 1226(a) "operates as a catchall provision *for all aliens*, including those who enter lawfully but later become inadmissible" or deportable. *Sandoval*,

2025 WL 3048926, at *4 (emphasis added); *accord Chavez v. Noem*, --- F. Supp. 3d ----, No. 3:25-cv-2325-CAB-SBC, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025).

True, there is language in the Supreme Court's overview of this statutory scheme in *Jennings* suggesting that Section 1226 "generally governs the process of arresting and detaining" noncitizens "once inside the United States." 583 U.S. at 288; *see also id.* at 289 (explaining that the INA "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)"). That language is best read to reflect the catchall nature of Section 1226(a), as explained above. Any broader reading of that language to support Chen's position is misplaced. Supreme Court opinions should not be read to decide issues not squarely presented or even raised to the Court, as is the case here. Indeed, the Supreme Court itself has warned that a passing "remark" in a prior opinion about the operation of a statute "is obviously not controlling, coming as it did in an opinion that did not present the question [the Court] decide[d]" in the instant case. *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 463 n.11 (1993). Such remarks are "a valuable reminder about the need to distinguish an opinion's holding from its dicta." *Id.* This Court heeds that reminder and declines to give the dicta in *Jennings* controlling weight. *But see* Petition ¶ 38 (relying on this dicta); Reply at 2 (same).

Chen further argues that the Government's reading of Section 1225(b)(2)(A) is "inconsistent" with the Laken Riley Act's recent amendment to Section 1226(c). Reply at 3-4. The argument is, essentially, that under the Government's reading of Section 1225(b)(2)(A), the Laken Riley Act would not have needed to reference Section 1182(a)(6)(A), which applies to an "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General," 8 U.S.C. § 1182(a)(6)(A)(i), and thus overlaps with reading Section 1225(b)(2)(A) to reach "[a]n alien

present in the United States who has not been admitted," *id.* § 1225(a)(1) (definition of "applicant for admission"). This argument too fails to persuade. First, as noted, mandatory detention under Section 1225(b)(2)(A) is triggered only "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," *id.* § 1225(b)(2)(A); that same requirement does not exist for mandatory detention under Section 1226(c) (although "a warrant" is required under Section 1226(a)). Moreover, Section 1182(a)(6)(A) is not the only subparagraph of Section 1182(a) the Laken Riley Act references: it also covers noncitizens inadmissible under subparagraphs (6)(C) and (7) who are connected to certain crimes. And "an individual who has been admitted through fraud" under subparagraph (6)(C), say, "might not be an 'applicant for admission' under § 1225," *Mejia Olalde*, 2025 WL 3131942, at *4, as a noncitizen can have "procured" by fraud or willful misrepresentation "admission into the United States," 8 U.S.C. § 1182(a)(6)(C)(i). So the Laken Riley Act "may require that person to be detained even if § 1225 would not apply." *Mejia Olalde*, 2025 WL 3131942, at *4.

Because Section 1225(b)(2)(A) and the Laken Riley Act "overlap in part" but "are by no means congruent," there is "no reason to depart from the plain meaning of" Section 1225(b)(2)(A) "in order to avoid making" the Laken Riley Act "superfluous." *Jennings*, 583 U.S. at 305 (rejecting an argument that Section 1226(c) should be read a certain way to prevent a provision of the PATRIOT Act "from being superfluous"). Congress, after all, is entitled to "take[] a 'belt and suspenders approach' to legislation," *Mejia Olalde*, 2025 WL 3131942, at *4 (citation omitted), especially where—as here—reasonable minds can differ (and in fact have differed) on the scope of Section 1225(b)(2)(A)'s mandatory detention. There is nothing incongruous about Congress making sure a particular class of noncitizens is detained without bond. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) (explaining that "redundancies are common in statutory drafting," sometimes

"in a congressional effort to be doubly sure," and that "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text").

Finally, the Court acknowledges that immigration authorities had long understood that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled" would "be eligible for bond and bond redetermination" under Section 1226(a). 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997); *see also* Tr. of Oral Arg. at 44-45, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954) (representing DHS's "long-standing interpretation" that Section 1226(a) "applies . . . to anyone who is in the United States," including "those who have crossed the border between ports of entry and are shortly thereafter apprehended").  Indeed, the BIA itself acknowledges "that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection."  *In re Yajure Hurtado*, 29 I. & N. at 225 n.6.[8]  But while "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is," it cannot "supersede" that determination.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (citation modified).  Rather, "a long-established practice does not justify a rule that denies statutory text its fairest reading."  *Armstrong v.*

---

[8] It may well be the case that as a matter of discretion, the executive previously had refrained from making the required "determin[ation] that . . . alien[s] seeking admission [are] not clearly and beyond a doubt entitled to be admitted" to trigger mandatory detention under Section 1225(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).  *See* Tr. of Oral Arg. at 8, *Biden v. Texas*, 597 U.S. 785 (suggesting that this provision "should be interpreted against the backdrop of long-standing principles of enforcement discretion," as "DHS does not have sufficient capacity to detain everyone who could be subject to detention under that provision").  If so, there is nothing "mutually exclusive" about Section 1225(b)(2)(A) and Section 1226(a), because the consequences for detention would turn on the executive's invocation of a procedural requirement rather than any characteristic of the noncitizen.  *Contra Lopez Benitez*, 795 F. Supp. 3d at 485 (asserting that "a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226").  Although the Government did not expressly raise this possibility in its papers, *see* Opposition; Gov. Suppl. Ltr., "parties cannot waive" or forfeit "the correct interpretation of the law by failing to invoke it," *UC Health v. NLRB*, 803 F.3d 669, 679 n.5 (D.C. Cir. 2015) (citation modified).  The Court, however, declines to give this potential argument controlling weight.

*Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015) (internal quotation marks omitted).

The fairest reading of Section 1225(b)(2)(A) is that (aside from the three categories of aliens excepted under Section 1225(b)(2)(B)) it covers all applicants for admission, including those "present in the United States" who have "not been admitted" and never gained lawful entry into the country after inspection and authorization by an immigration officer, regardless of how long they have been present.  8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(1), (b)(2)(A).  Those applicants must be detained when "the examining immigration officer determines" that they are "not clearly and beyond a doubt entitled to be admitted."  *Id.* § 1225(b)(2)(A).

### 2. Chen Is an Applicant for Admission Who an Immigration Officer Has Determined Is Not Clearly Entitled to be Admitted.

With that reading in mind, Chen is covered by Section 1225(b)(2)(A), and so he must be detained without a bond hearing.  Chen is an "applicant for admission," *id.* § 1225(b)(2)(A), because he is "present in the United States" without having "been admitted," *id.* § 1225(a)(1), meaning that he never gained lawful entry into the country after inspection and authorization by an immigration officer, *id.* § 1101(a)(13)(A).  As the undisputed factual record shows, Chen "arrived in the United States" but was "not then admitted or paroled after inspection by an Immigration Officer," meaning that he is "an alien present in the United States who has not been admitted or paroled."  Notice to Appear; *see* I-213 Form at 3 (stating that Chen "had unlawfully entered the United States from Mexico").  In other words, Chen "was never 'admitted' to the United States in that he never lawfully entered it[,] and is therefore treated as an 'applicant for admission.'"  *Lopez Benitez*, 795 F. Supp. 3d at 488 (conceding that noncitizens like Chen are applicants for admission); *accord Chen*, 2025 WL 3484855, at *4.  In addition to Chen being an applicant for admission who is thus seeking admission, *see supra* III.A.1, an "examining immigration officer" has determined that he "is not clearly and beyond a doubt entitled to be

admitted," 8 U.S.C. § 1225(b)(2)(A).  Rather, Chen is inadmissible as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," Notice to Appear (citing 8 U.S.C. § 1182(a)(6)(A)(i)), which a "Border Patrol Agent determined" when Chen was first arrested in California, I-213 Form at 3.  *See also* EARM at 2 (explaining that at 26 Federal Plaza, "[a]fter a review of all relevant information, the release on the Order of Recognizance was cancelled following appropriate procedures and approved by" an official).[9]  So he "shall be detained" pending a full removal proceeding pursuant to Section 1225(b)(2)(A), which does not provide for a bond hearing, *see Jennings*, 583 U.S. at 297, 300.  Instead, Chen may be released only through discretionary parole for "urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

This conclusion holds true even though Chen was initially detained—shortly after crossing the border—and released on his own recognizance, purportedly under Section 1226.  *See* Warrant; Order of Release.  As the Government explains, Chen's "status as an applicant for admission has remained unchanged," Opposition at 11, and so he remains covered by Section 1225(b)(2)(A). Nor is there any basis in the INA for the proposition that "if an alien is released pursuant to Section 1226[,] any rearrest must also be made pursuant to Section 1226 with any attendant protections under that" provision.  *Chen*, 2025 WL 3484855, at *8.  So Chen is properly detained without bond under Section 1225(b)(2)(A).

* * *

As said at the outset, this Court recognizes that this holding puts it in the minority of those

---

[9] Chen does not argue that should Section 1225(b)(2)(A) generally apply to applicants for admission, the other statutory prerequisite—that an "examining immigration officer determine[]" that the applicant "is not clearly and beyond a doubt entitled to be admitted"—was not met in his case.

27

courts in the Second Circuit to have considered the question. *Compare, e.g.*, *Cardenas v. Almodovar*, No. 25 Civ. 9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (counting "scores of decisions—in this Circuit and beyond—on the Section 1226(a) side of the split"), *with Chen*, 2025 WL 3484855, at *8 (concluding that Section 1225(b)(2)(A) applied) *and Candido v. Bondi*, No. 25 Civ. 867 (JLS), 2025 WL 3484932, at *1-5 (W.D.N.Y. Dec. 4, 2025) (same). But while this Court disagrees with the majority's reading of the INA, it is in total agreement on this: "Reasonable minds can differ and often do—sometimes vehemently so—on difficult and important legal questions," including this one. *Goorakani v. Lyons*, --- F. Supp. 3d ----, No. 25 Civ. 9456 (DEH), 2025 WL 3632896, at *12 (S.D.N.Y. Dec. 15, 2025). District courts here, and across the country, are doing their "best to wrestle with complicated questions of law in good faith," under compressed timelines and with high stakes. *Id.* Although this Court parts ways with most of its peers on this issue, it appreciates their thoughtful approach to the challenging question at hand.

### B.    Chen's Detention Satisfies Due Process.

Chen's argument that his detention violates due process is tied to "DHS's failure to perform the required individualized custody assessment" under Section 1226(a). Reply at 4-5; *see* Petition ¶ 59 ("The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process."). As another court has observed, such an assertion "appears to present nothing beyond the larger contention as to the relevant and applicable statute to apply," without any broader argument "that the application of [Section] 1225(b)(2)(A) is itself unconstitutional, if determined to be the correct statute." *Cabanas*, 2025 WL 3171331, at *6-7. So Chen's due process claim, which simply rehashes his statutory claim, fails. *See supra* III.A.

In any event, Chen's detention under Section 1225(b)(2)(A) comports with due process.

"Detention during removal proceedings is a constitutionally valid aspect of the deportation process." *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020); *accord Demore v. Kim*, 538 U.S. 510, 523, 531 (2003).  For this reason, the Second Circuit has recognized that "due process does not require an *initial* bond determination for those detained under section 1226(c)," a provision mandating detention pending removal proceedings just like Section 1225(b)(2)(A). *Black*, 103 F.4th at 142.  If "the government may detain noncitizens under section 1226(c) without an initial bond determination," *id.*, then the same is true here.  And "given the relatively short duration" of Chen's detention—under two months—"any constitutional argument for habeas relief separate from the statutory one raised here, *if possible*, would be premature." *Candido*, 2025 WL 3484932, at *5 (collecting cases).

## IV.  Conclusion

For the above reasons, Chen's petition for a writ of habeas corpus is denied.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: January 14, 2026
       New York, New York

_____
JOHN P. CRONAN
United States District Judge